**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| CLIFFORD NANCE and KIRK NANCE,<br>Plaintiffs,<br><br>v.<br><br>KALISPELL SCHOOL DISTRICT #5 and JOHN DOES 1-10,<br><br>Defendants. | **CV-25-4-M-JTJ**<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES AND APPLICATION OF COSTS** |

## INTRODUCTION

Plaintiff Clifford Nance ("Clifford") and Kirk Nance ("Kirk") (collectively "Plaintiffs") filed a motion for attorneys' fees, costs, and non-taxable litigation expenses. (Doc. 103.) Defendant Kalispell School District #5 ("Kalispell") opposes the motion. (Doc. 107.) Plaintiffs also submitted their Bill of Costs, supporting itemization, and documentation on June 2, 2026. (Doc. 105.) Kalispell filed objections to Plaintiffs' Bill of Costs. (Doc. 108.) The Court held a hearing on the motions on November 6, 2026. (Doc. 183.)

## BACKGROUND

The Court held a jury trial on Plaintiffs' Title IX retaliation claims from June 15, 2026, to June 18, 2026. (Docs. 85, 86, 87, and 88.) The jury unanimously found that Kalispell retaliated against both Clifford and Kirk. (Doc. 93.) The jury

awarded both Plaintiffs their requested $1 in nominal damages. (*Id*.) The Clerk entered judgment in favor of Plaintiffs, and against Kalispell on June 19, 2026. (Doc. 95.) Plaintiffs now move for attorney fees, costs, and non-taxable litigation expenses as the prevailing party. (Docs. 104 and 105.)

## LEGAL STANDARD

### I. Attorneys' Fees Award

A prevailing party may motion the court for attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2). "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[]" in an action to enforce Title IX. 42 U.S.C. § 1988(b). A plaintiff who wins nominal damages proves a "prevailing party" under § 1988. *Farrar v. Hobby*, 506 U.S. 103, 112-13 (1992). "[T]he most critical factor" regarding the reasonableness of an attorneys' fees award remains "the degree of success obtained." *Id.* at 114 (citations omitted).

### II. Award of Costs

Trial courts have the discretion to award costs to the prevailing party in litigation. Fed. R. Civ. P. 54(d); *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012). Loc. R. 54.1 provides:

> Within 14 days after the entry of a judgment allowing costs, the prevailing party may serve and file an application for the taxation of costs. The application must be made on Form AO-133, Bill of Costs, available on the court's website and shall be limited to the costs permitted by 28 U.S.C. § 1920.

> Sufficient documentation showing the amount of costs (including but not limited to, copies of invoices, receipts, orders, vouchers, billing statements, etc.) is required. Failure to attach sufficient documentation to support a claimed cost is grounds for disallowance of that particular item.
>
> The opposing party may object within 14 days after the application was filed. Any objection must specify the item and/or amount objected to and give reasons for the objection.

Section 1920 of Title 28 of the U.S. Code limits the costs and fees that a trial court may tax pursuant to its authority under Rule 54(d) to specific categories. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 437 (1987). Section 1920 permits a court to tax costs for the following categories: clerk and marshal fees, fees for printed or electronically recorded transcripts necessarily obtained in the case, and fees for printing and witnesses. Section 1821(b) of Title 28 of the U.S. Code provides that "a witness shall be paid an attendance fee of $40 per day" for each day the witness appears in court or in a deposition. A "district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award. The presumption itself provides all the reason a court needs for awarding costs." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

## DISCUSSION

### I. Whether the Court Should Award Plaintiffs' Requested Attorneys' Fees.

Courts consider three factors when determining whether a prevailing party who received nominal damages may recover an attorneys' fee award: (1) the difference between the damages sought and those awarded; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) whether the plaintiff accomplished some public goal. *Mahach-Watkins v. Depee*, 593 F.3d 1054 (9th Cir. 2010) (citations omitted). The Court will address each factor in turn.

Kalispell asserts that, in Plaintiffs' initial pleadings, Plaintiffs requested $750,000 in damages. (Doc. 107 at 6 (citing Doc. 17 at 9).) Kalispell argues that Plaintiffs' requested damages differ greatly from the $1 awarded to Plaintiffs. (*Id.*) Plaintiffs decided to forego their monetary damages claims during trial and requested only that the jury award Kirk and Clifford each $1. The amount recovered by Plaintiffs at trial differed largely from their *initial* request for an award of damages over $750,000. On the other hand, the jury awarded exactly the $1 nominal damages Plaintiffs ultimately sought. The Court finds that the first factor remains neutral.

The Court turns to the second factor. Kalispell "recognizes the importance of ensuring that individuals are not retaliated against for engaging in protected activity under Title IX." (Doc. 107 at 7.) Plaintiffs' adjudication of this lawsuit

clearly involved important issues and demonstrated Title IX's guaranteed protections. Plaintiffs' case was the first in Montana to establish that a student may fall within the “zone of interests” of a parent's Title IX complaints and that a school cannot retaliate against a student because their parent reported sexual discrimination. (*See* Doc. 93 at 3.)

Plaintiffs established, and the jury agreed, that Kirk engaged in a protected activity by speaking out about sexual harassment occurring on the Glacier High School wrestling team. (*Id.* at 1.) The jury further found that Kalispell retaliated against both Clifford and Kirk because of Kirk’s engagement in the protected activity. (*Id.* at 3.) This jury verdict settled important legal issues. This jury verdict acknowledges parents' and students' right to speak out against sexual discrimination occurring at a public school without fear of retaliation by the public school. The second factor weighs in favor of an award of fees.

Lastly, as to the third factor, Plaintiffs argue that their successful verdict has had public impact. (Doc. 104 at 15.) The Court determines that Plaintiffs’ suit has achieved a public benefit, because it has prompted Kalispell to consider changes that will further the goals of Title IX. Plaintiffs provide examples of Kalispell’s Superintendent Matt Jensen’s (“Jensen”) statements and news articles posted following the verdict to support the contention that Plaintiffs accomplished a public goal. (*Id.*)

Jensen commented, for example, that Kalispell “hope[s] this experience leads to greater clarity and more collaborative responses between parents and staff when difficult situations arise.” (Doc. 104-11 at 4.) Plaintiffs argue that this acknowledgement by Kalispell shows that Kalispell has been prompted to review its policies and make changes to better serve its parents and students. (*Id.*) Kalispell acknowledged that Kalispell's and its staff’s response to reports may need adjustments. (*Id.*) "Title IX’s goal of eliminating [retaliation] in educational institutions” is furthered where school districts are prompted to carefully consider their reactions and policies regarding reports by parents and students. *See Mercer v. Duke Univ*., 401 F.3d 199, 208-09 (4th Cir. 2005).

The verdict also accomplishes a public goal by warning school districts against retaliation. *Morales v. City of San Rafael* recognized that a plaintiff who obtains limited damages may still merit a substantial fee where the litigation vindicates important rights. 96 F.3d 359, 365 (9th Cir. 1996), amended, 108 F.3d 981 (9th Cir. 1997). Plaintiffs' verdict, like the verdict in *Morales*, “constitutes a warning” to school district officials not to retaliate against parents or students who engage in protected activity under Title IX. *Id*. Plaintiffs suit did not merely vindicate their individual rights and accomplished “some public goal other than occupying the time and energy of counsel, court and client.” *Farrar*, 506 U.S. at 121-22.

**II. Whether Plaintiffs' Lodestar is Reasonable.**

The parties agree that the lodestar method is the appropriate method to calculate attorneys' fees in this case. (Doc. 107 at 11; *See* Doc. 104 at 16.) Kalispell also does not object to most of Plaintiffs' alleged fees, including counsel's hourly rates and Plaintiffs' alleged un-taxable litigation expenses. (Doc. 118 at 11-12.) Kalispell identifies only two categories of fees which it argues are either not chargeable to Kalispell or warrant a reduction. (Doc. 107 at 11-13.) First, Kalispell alleges that Plaintiffs' original legal theory identified too many defendants, which prompted Kalispell to file a motion to dismiss and ultimately required Plaintiffs to amend their complaint. (*Id.* at 11-12.) Second, Kalispell contends that Plaintiffs sought testimony and information on matters that were not germane to or utilized in Plaintiffs' case. (*Id.* at 12-13.) The Court will consider each fee category in turn.

The Court need not deduct Plaintiffs' fees resulting from the motion to dismiss. Claims involving "a common core of facts" or "based on related legal theories" make it difficult to divide the hours expended on a claim-by-claim basis. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Ninth Circuit does not require a district court to parse out "time spent on a losing stage of litigation" that "constitutes a step toward victory." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991); *NAACP, Western Region v. Richmond*, 743 F.2d 1346, 1358 (9th Cir. 1984).

District courts instead focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation, because attorneys often devote significant hours to civil rights cases as a whole. *Hensley*, 461 U.S. at 435. Plaintiffs, in such cases, are still prevailing parties entitled to attorneys' fees if they succeed "'on any significant issue in [the] litigation which achieves some of the benefit the parties sought in bringing suit.'" *NAACP, Western Region*, 743 F.2d at 1358 (9th Cir. 1984); *Hensley*, 461 U.S. at 433 (1983), *quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978).

The Court notes that Kalispell's motion to dismiss (Doc. 5) arose from the same common core of facts at the Plaintiffs' ultimately successful claim. The Court notes that the complaint (Doc. 1) and the first amended complaint ("FAC") (Doc. 9) plead substantially similar facts regarding a substantially similar claim and request substantially similar relief. The FAC is altered to address Kalispell's critiques of Plaintiffs' choice of defendants, but the two are otherwise largely similar complaints, which arose from the same common core of facts. (Doc. 1 at 1, Doc. 5 at 1.)

Counsel's work on the motion to dismiss primed Plaintiffs' claim for its later success and served as a "lost skirmish on the way to winning the war." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991.) The FAC, derived in large part from the complaint and refined after Kalispell's motion to dismiss, was

the complaint upon which Plaintiffs ultimately prevailed. The Court finds that the motion to dismiss, and the Plaintiffs' response via the first amended complaint, constituted a step toward victory for which Plaintiffs may recover attorneys' fees. *NAACP, Western Region*, 743 F.2d at 1358 (9th Cir. 1984).

The Court turns next to Kalispell's allegation that Plaintiffs claim attorneys' fees for time spent on testimony and information for matters that were not germane or utilized in Plaintiffs' case. (Doc. 107 at 12-13.) Kalispell alleges that Plaintiffs' counsel represents one claimant in another filed case seeking damages from the District and another that counsel has indicated is forthcoming, and that both claimants testified in this litigation. (*Id.* at 12.) Plaintiff alleges that discovery information related to the District's Title IX investigation and records involving student information and witness statements obtained by the District is unrelated to the question of retaliation against the Nances and was not utilized at the time of trial. (*Id.*) Kalispell specifically cites deposition testimony sought from Mark Dennehy, Ross Dankers, and Sara Cole that Kalispell contends was not germane or utilized in the Nances' case, but were referenced in the complaint in *Vergeront v. Kalispell School District #5, et al.,* Case No. CV-26-24-M DWM (Feb. 5, 2026 D. Mont.) and that may be relevant to an additional forthcoming case. (*Id.* at 13.)

Plaintiffs respond that the information was relevant to Kalispell staff's knowledge, motive, and credibility which aided Plaintiffs in proving the causal

connection between Plaintiffs' protected activity, and the adverse actions Plaintiffs suffered. (*Id.* at 12.) Plaintiffs also allegedly used materials from the other students' Title IX investigations as trial exhibits and impeachment material. (*Id.* at 13.)

The Court declines Kalispell's request to reduce discovery fees by one-third. (Doc. 107 at 13.) The district court may impose only a small discretionary reduction, no greater than 10 percent, without a more specific explanation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). A district court cannot tell by a cursory examination which hours are unnecessarily duplicative. *Id.* Kalispell makes no effort to disentangle which of Plaintiffs' discovery hours were germane to Plaintiffs' case and which were not. A thirty-percent reduction across all discovery hours would prove arbitrary and the Court would overreach in granting it. *Id.*

Instead, the Court acknowledges the high likelihood of *some* overlap of Plaintiffs' counsels' discovery work between Plaintiffs' current case, *Vergeront,* and the forthcoming case. The *Vergeront* case indeed cites information likely derived from Title IX investigation information obtained during discovery in Plaintiffs' case. *See Vergeront v. Kalispell School District #5, et al.,* Case No. CV-26-24-M DWM, ¶ 56 - 59 (Feb. 5, 2026 D. Mont.). The same material may be germane to two different cases, however, and the Court does not determine that all material that went on to be used in *Vergeront* was not germane to Plaintiffs' case. The Court

notes that Plaintiffs' trial exhibits and impeachment material which prove informative as to Kalispell's knowledge, motive, and credibility indeed may be germane to *Vergeront*. (*See* Ex. 19, Policy 2158, Doc. 100; Ex. 20, Policy 4301, Doc. 100; Ex. 21, Policy 4313, Doc. 100; Ex. 31, Email Correspondence Between Randy Cline and Kirk Nance (Dec. 27, 2023), Doc. 100; Ex. 47, Meeting Notes – KB, Doc. 101.)

The Court therefore applies a discretionary ten percent reduction to discovery hours. The Court identifies hours wherein Plaintiffs undertook discovery-related tasks that potentially pertained to the evidence in question from Plaintiffs' time records. (*See* Doc. 104, Exhibit B, Itemized Time Records of Avery L. Field; *See also*, Doc. 104, Exhibit D, Itemized Time Records of Michael A. Bliven.) The Court also narrows discovery hours to the time window between the parties' April 7, 2025 deadline to serve their initial disclosures (Doc. 19 ¶ 2) and the close of discovery on December 12, 2025. (Doc. 22.) The Court notes that even this calculation is largely an approximation based on the Court's assessment of Plaintiffs' counsels' time logs.

The Court finds Avery L. Field charged approximately 172.64 hours within the specified parameters at a rate of $250 per hour. (*See* Doc. 104 ¶ 4, Exhibit A, Aff. of Avery L. Field.) The Court finds Michael A. Bliven charged approximately 1.8 hours within the specified parameters at a rate of $400 per hour. (*See* Doc. 104

¶ 4, Exhibit D, Aff. of Michael A. Bliven.) Together, Plaintiffs allege $43,610 in discovery fees. The Court deducts ten percent ($4,361) of this discovery fee subtotal from the Plaintiffs' total alleged attorneys' fees overall ($238,255). (*See* Doc. 118 at 16; Doc. 180 ¶ 10; Doc. 181 ¶ 10.) This calculation yields and the Court finds that Plaintiffs are entitled to $233,894 in attorneys' fees.

**III. Whether the Court Should Award Plaintiffs' Requested Costs.**

Section 1920(2) of Title 28 of the U.S. Code authorizes taxation of "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Section 1920(4) allows taxation of costs for copies "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Finally, § 1821(b) allows witness fees in the amount of $40.00 per witness per day, as well as mileage allowance for travel by personal vehicle. 28 U.S.C. § 1821(b) and (c)(2).

Plaintiffs seek reimbursement of costs in the total amount of $5,235.63. (Doc. 105.) Plaintiffs submit costs for services of summons and subpoenas, transcripts, printing, and witnesses. (*Id*. at 1.) Kalispell objects to Plaintiffs' alleged costs for printing fees and disbursements in the amount of $1,034.05. (Doc. 108 at 2.) Kalispell argues that Plaintiffs have provided insufficient documentary support for reimbursement of these copying costs. (*Id*.) The Court agrees. Plaintiffs did not submit any documentation or receipts that indicated the amounts spent on printing

materials. The Court declines to award Plaintiffs $1,034.05 in costs for fees and disbursements for printing.

Kalispell objects to several of the Plaintiffs' costs for witness fees and mileage for the ten listed witnesses. (Doc. 108 at 2.) Kalispell specifically objects to the witness fees and mileage requested for Cody Vergeront and Lloyd Bondy. (*Id.*) Kalispell contends that Plaintiffs failed to provide sufficient documentary evidence to support witness fees and mileage of Vergeront and Bondy in the amounts of $212.55 and $432.95, respectively. (*Id.*) Vergeront and Bondy testified at trial and are entitled to receive the $40 witness fee. Kalispell does not dispute that Vergeront and Bondy were served subpoenas by Plaintiffs. (Doc. 108 ¶ 3.) The Court will allow Plaintiffs to recover the $40 witness fees for Vergeront and Bondy.

Plaintiffs did not provide sufficient evidence of the mileage allowance for Vergeront or Bondy. Plaintiffs, for example, represent that Bondy traveled 542 miles but does provide the location Bondy traveled from. (Doc. 105 at 2.) Similarly, Plaintiffs represent that Vergeront traveled 238 miles without explanation. (*Id.*) Kalispell is likely familiar with the locations of the witnesses that Kalispell employs. The Court uses its discretion to exclude the mileage allowance for Vergeront and Bondy.

Kalispell also argues that Plaintiffs improperly seek the cost of witness attendance and mileage for Korbin Baldwin in the amount of $167.50. (Doc. 108 at 2.) Kalispell contends that *Kalispell* served Baldwin a subpoena to appear at trial, not Plaintiffs. (*Id*.) Kalispell provided Baldwin a check for his witness fees and mileage. (*Id*.) The Court declines to provide Plaintiffs Baldwin's fee and mile allowance, based on the information provided by Kalispell regarding the witness fees and mileage it provided Baldwin.

The Court accordingly allows and disallows the below costs.

**ALLOWED COSTS AND FEES:**

| | | |
|---|---|---|
| Witness fees | | $1438.80 |
| - Witness fee – Cody Vergeront | $40.00 | |
| - Witness fee – Walker Biggs | $40.00 | |
| - Witness fee – Steven Biggs | $40.00 | |
| - Witness fee – Lloyd Bondy | $40.00 | |
| - Witness fee – Justin Turner | $40.00 | |
| - Witness fee – Garrett Melton | $40.00 | |
| - Witness fee – Ross Dankers | $40.00 | |
| - Witness fee – Mark Dennehy | $40.00 | |
| - Witness fee – Sara Cole | $40.00 | |
| - Mileage allowance - Walker Biggs | $174.00 | |
| - Mileage allowance - Steven Biggs | $174.00 | |
| - Mileage allowance – Garrett Melton | $182.70 | |
| - Mileage allowance – Ross Dankers | $182.70 | |
| - Mileage allowance – Mark Dennehy | $182.70 | |
| - Mileage allowance – Sara Cole | $182.70 | |
| Fees for service of summons and subpoena: | | $297.75 |
| Fees for printed or electronically recorded transcripts necessarily obtained: | | $1,731.53 |

| | |
|---|---|
| **TOTAL** | $3,468.08 |

**DISALLOWED COSTS AND FEES:**

| | | |
|---|---|---|
| Witness Fees | | $732.90 |
| - Witness fees and mileage – Korbin Baldwin | $167.40 | |
| - Mileage allowance – Cody Vergeront | $172.55 | |
| - Mileage allowance – Lloyd Bondy | $392.95 | |
| Costs for obtaining copies: | | $1,034.65 |
| **TOTAL** | | $1,767.55 |

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorneys fee, costs, and non-taxable litigation expenses (Doc. 103 and 105) is GRANTED, in part, and DENIED, in part.

1. The Court awards Plaintiffs $233,894.00 in attorneys' fees.
2. Kalispell must pay $3,468.08 to Plaintiffs for taxable costs.
3. Kalispell must pay $9,933.70 to Plaintiffs for un-taxable costs.

DATED this 17th day of November 2026.

John Johnston
United States Magistrate Judge